## HELMS, Adm'r, v. BULINGTON.

No. 27332. June 29, 1937.

John Barry and Chas. H. Garnett, for plaintiff in error.

Whitten & Whitten, for defendant in error.

CORN, J. This is an appeal by T. R. Helms, as administrator of the estate of J. C. Helms, from a judgment of the district court of Oklahoma county. For convenience the parties will be referred to as in the trial court.

In February, 1927, J. C. Helms and Miss Bulington, his stenographer, were in an automobile accident in which she was seriously injured. Mr. Helms tendered his services, telling her there would be no attorney's fees, and with the aid of several other attorneys filed suit for her, and also a separate suit for himself. To his suit the defendant filed a cross-petition.

Upon trial Miss Bulington recovered a judgment for $12,000. Helms then began negotiations looking toward compromise of the judgment, and eventually told the attorneys for the insurance carrier that Miss Bulington would accept $9,000, and this settlement was made April 21, 1928, Helms at the same time dismissing his action. All the negotiations were carried on without Miss Bulington's knowledge. Helms suggested to the attorney for the insurance carrier that two release stipulations be drawn, one showing settlement with Miss Bulington for $7,250, and one in the amount of $1,750 for himself; to this the attorney for the defendant agreed, and the settlement was completed.

Helms then called on Miss Bulington in Tulsa and informed her that settlement had been made for $7,250, and from this deducted $1,574, the amount he had advanced to her, and $750 more as fees for the attorneys who tried the case, but it was never shown that they received fees for their services.

In April, 1933, the plaintiff learned that her case had been settled for $9,000 and in January, 1934, this suit was filed. The defendant Helms answered, but in April, 1935, while this action was pending, he died, and T. R. Helms, his brother, was appointed administrator. The plaintiff then filed her motion and application for revivor against the administrator, in an action for fraud and money received in the amount of $1,750 and $750, but the claim for $750 was withdrawn. The case was tried in February, 1936, resulting in a verdict for the plaintiff for $1,750, with interest, and the defendant appeals, making six assignments of error to this court, which are dealt with in seven propositions, and which will be discussed in the order submitted.

The first proposition urged by the defendant is that declarations, made by one since deceased, as to facts relevant to the issues are admissible in evidence when it appears they were against his pecuniary interest when made and related to a matter of which he was personally cognizant, and that he had no probable motive to falsify the facts.

This contention is undoubtedly made in an effort to show that testimony in respect to the deceased's statements during the negotiations for settlement could not have been properly admitted, unless made under such circumstances that there was no reason nor excuse for his making a false statement, the reasoning of the defendant being that the statements were merely made as "sales talk," and since the deceased was cognizant of all the facts, he would not have made the statements in regard to the disposition of the amount paid in settlement, had he intended them to be binding, and that they are not to be otherwise considered.

While this is generally true, and the rule as to the admissibility of such statements is correctly stated, there are other considerations here. The authorities quoted by the defendant are cases in which the issue of fraud is not involved, as in the present case. In all cases where fraud is alleged, a greater latitude is allowed in the discretion of the court for the introduction of evidence going to prove such fraud. The

defendant seems to think that such statements should have been rejected, since he had a motive for misrepresentation, this motive being one of a controversial nature, by which he was attempting to influence the settlement. Taken alone this might be true, but when considered in the light of later circumstances the trial court was correct in admitting these statements as tending to show the deceased's declared intention in respect to the money paid Miss Bulington, and that the statements were a part of the general scheme of the fraud perpetrated.

In the second proposition the defendant states that "declarations made by a party in casual conversation are justly said to be the weakest of all evidence." In answering this proposition one question should be asked: Were these declarations Helms made to Judge Owen made as part of a casual conversation, or were they a part of a formulated plan to deprive Miss Bulington of a part of the money she was to receive? The settlement was made upon Helms' representations as to what Miss Bulington would settle for; the insurance company was paying $9,000 in satisfaction of her $12,000 judgment, and Helms represented that such settlement was satisfactory with her, the settlement being made on this basis. The conversation concerning which the trial court admitted certain testimony, was not casual, but was vital to the negotiations conducted in settling the case. From the settlement finally made by Judge Owen and Helms it is apparent that his statements were believed and relied upon. Reliance was placed in the statements Helms made, and this being true and the settlement being had as a result of his representations, said statements were material and properly admitted in evidence by the trial court.

Next the defendant contends that "oral evidence relied upon to enforce an obligation by a person deceased should be clear, positive, and convincing." By itself, with no other circumstances to consider, this is a proper statement of the law. However, a review of the authorities cited by the defendant reveals that they are cases based upon actions on contracts, and are not concerned with the propositions of fiduciary relationship of attorney and client such as we have here.

As a client of J. C. Helms, the plaintiff had every right to rely upon the truth of his statements.

It is true that certain oral evidence was admitted at the trial, and the defendant is correct in saying that such evidence must be clear and convincing to enforce an obligation. This testimony at the trial might not be sufficient if taken alone. However, it is not directed so much toward attempting to show a contract between Helms and Miss Bulington as toward showing the general circumstances surrounding the whole affair. The plaintiff is trying to prove one act, the act of defrauding her of money due her, and these oral statements were properly admitted, not as tending to prove a contract under which Helms obligated himself to her and which the defendant now denies, but as further circumstances of fraud, the issue which the plaintiff necessarily had to prove in order to recover.

By proposition 4 the defendant sets up that fraud is never presumed, but must be proved by clear and satisfactory evidence. And "when a transaction is fairly susceptible of two constructions, the one which will free it from imputation of fraud will be adopted." In behalf of this the defendant asserts that there is no evidence of fraud, stating that the evidence shows without conflict that the insurance company would not settle with Miss Bulington unless settlement was perfected in both cases, and that there was no offer by the insurance company to settle Miss Bulington's case for $9,000.

The record reflects that the terms of the settlement were not so stated. The testimony of Judge Owen, to which the defendant made no objection, was that the offer to settle Miss Bulington's case for $9,000 was submitted to the company, and accepted, not that the offer was to pay her if Mr. Helms would dismiss his action, as the defendant contends. This court agrees with counsel for plaintiff in saying that when Mr. Helms, acting as attorney for Miss Bulington, offered to settle for $9,000 and the offer was accepted, at that time the actual agreement was consummated and it constituted a settlement of her entire judgment, and Mr. Helms was then bound to account to her for the entire amount.

No one particular act establishes the fraud done here. Instead it is shown by several features, all of which, when weighed with the other, go to prove it, and which are sufficient to prove in a clear and satisfactory manner that Mr. Helms did perpetrate a fraud upon the plaintiff—Mr. Helms' own statements to Judge Owen; his request for two release stipulations; his

cashing of the check given him by Judge Owen; the appearance of Miss Bulington's signature thereon never having been explained; and the showing that Miss Bulington received only a check for $7,250.

This court has previously announced that to constitute actionable fraud the defendant must have knowingly or recklessly made a material, false representation with the intention that it be acted upon, and the plaintiff must have so acted upon it as to result in injury. Wingate et al. v. Render, 58 Okla. 656, 160 P. 614; Henry v. Collier, 69 Okla. 24, 169 P. 636; and Humphrey v. Baker, 71 Okla. 272, 176 P. 896. The instant case certainly falls within the boundaries of this rule. All circumstances leading up to his act showed a careful calculation, when he represented to the plaintiff that the settlement was for $7,250, without informing her that the full settlement was for $9,000. The plaintiff relied upon her attorney, whom she had every reason to trust, and because of her confidence in him and his representations to her, she was injured by failing to receive the full sum of money which rightfully belonged to her. Certainly all the elements of an actionable fraud are present here, and the finding of fraud was sufficiently sustained by the evidence.

Briefly expressed, the defendant's fifth proposition is that a fraudulent representation must be made to the injured party or his agent, and the representations relied upon. The defendant takes the position that plaintiff's entire case is based upon the representations made to Judge Owen by Mr. Helms. The record reflects that this is not the case. The false representations relied upon by the plaintiff, and because of which she was injured, were those representations made to her in regard to the amount of the settlement. The defendant is correct as to the statement of the law if the plaintiff's case were based solely upon what took place between Mr. Helms and Judge Owen. The one thing that controls is the accomplishing of the wrong by the deceased, indicated by the entire set of circumstances taken as a whole. The correctness of the trial court in admitting testimony showing fraud is sustained by past decisions from this court. In Mangold & Glandt Bank v. Utterback, 70 Okla. 315, 174 P. 542, this court said:

"Circumstantial evidence to show fraud is oftentimes admissible as a whole, although some of the circumstances considered separately would be incompetent. The whole transaction involving the alleged fraud may be given in evidence."

The sixth proposition is that there is no evidence reasonably tending to support the verdict and judgment. This has already been discussed in connection with the third, fourth, and fifth propositions, but for clarity it may be carried further. The defendant cites Littlefield v. Aiken, 130 Okla. 142, 265 P. 1054, setting forth the elements of actionable fraud. Agreeing with the defendant's authority, we hold that all the prescribed elements of fraud were present in the instant case, to wit:

(1) A material representation by Mr. Helms to Miss Bulington that she had only $7,250 coming to her, and settling with her on that basis; (2) when he had actually received $9,000 for her, as her attorney; (3) Mr. Helms made these statements knowing them to be false; (4) he exhibited only one check to Miss Bulington, that check for $7,250; and she knew nothing of the $9,000 check (this was evidently for the purpose of inducing her to accept the $7,250 as settlement); (5) the plaintiff relied upon these representations as shown by her acceptance of settlement for $7,250; (6) she suffered a loss, resulting from her reliance upon these representations; and (7) the elements of fraud being present and the facts constituting the fraud being shown with reasonable certainty, there is no reason for disturbing the jury's verdict.

The seventh proposition is the contention that the trial court did not have jurisdiction over the defendant because the action was not properly revived as provided by statute, since notice of the application for revivor was served upon his attorney and not upon him personally.

After the original action was filed, J. C. Helms died, and this defendant was appointed administrator. On August 13, 1935, the plaintiff filed her first motion and application for revivor of action. This notice had attached to it:

"Service is hereby accepted on behalf of Theodore Helms, administrator of the estate of John C. Helms, deceased, a copy of the above and foregoing notice, by the undersigned as attorney of record for said Theodore Helms, etc., on this 17th day of August, 1935.

"Chas. Garnett."

Upon this notice and application an order was entered and an amended petition filed. The defendant entered a special appearance and objection to the jurisdiction, which

was overruled, and Garnett was served with notice, and an order of revivor was entered, objected to by the defendant, but overruled. The question here is whether Garnett accepted service of notice to revive as agent of the administrator, and did acceptance by him operate to vest the trial court with jurisdiction to revive, or did the defendant have to be served personally.

The defendant urges that section 578, O. S. 1931, lays down a hard and fast rule as to the method of revivor, particularly as to service, and cites numerous authorities, relying particularly upon Boyes v. Masters, 28 Okla. 409, 114 P. 710, which has been followed by this court. However, a later case, Van Curon v. King, 93 Okla. 1, 219 P. 337, contains the following:

"Consent or notice under section 831, C. O. S. 1921, is necessary to jurisdiction in making an order of revivor. Such notice may be waived by the conduct and knowledge of the attorney for the party against whom revivor is sought. Record examined, and held, that defendant is estopped to deny waiver of such notice."

The position of this court is, apparently, that an action can and must be revived under the provisions of sections 573-578, 583, O. S. 1931, which sections intended to provide a summary method for revivor within one year. The construction of this court was that section 156, O. S. 1931, was to provide a method within the discretion of the court in other cases, this court having held that sections 156 and 584, O. S. 1931, are not conflicting. See Edwards v. Asher, 95 Okla. 39, 217 P. 869.

Since this action was revived within the one year prescribed, upon notice to the attorney for the defendant, the necessity of further notice was waived and the action was properly revived.

Judgment of the trial court affirmed.

OSBORN, C. J., and BUSBY, WELCH, and HURST, JJ., concur. BAYLESS, V. C. J., and RILEY, PHELPS, and GIBSON, JJ., absent.